1

2

3          UNITED STATES DISTRICT COURT
4        WESTERN DISTRICT OF WASHINGTON
              AT TACOMA
5

6   CASSIE TIBBITS,

7                        Plaintiff,        Case No. 3:11-cv-05432-RBL-KLS

8          v.                              REPORT AND RECOMMENDATION

9   MICHAEL J. ASTRUE, Commissioner of     Noted for February 10, 2012
    Social Security,
10
                         Defendant.
11

12

13

14

15

16        Plaintiff has brought this matter for judicial review of defendant's denial of her

17  applications for disability insurance and supplemental security income ("SSI") benefits.  This

18  matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

19  636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v.</u>

20  <u>Weber</u>, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the

21  undersigned submits the following Report and Recommendation for the Court's review,

22  recommending that for the reasons set forth below, defendant's decision to deny benefits should

23  be reversed and this matter should be remanded for further administrative proceedings.

24

25                      FACTUAL AND PROCEDURAL HISTORY

26        On October 24, 2007, plaintiff filed an application for disability insurance, and on

REPORT AND RECOMMENDATION - 1

October 26, 2007, she filed another one for SSI benefits, alleging disability as of August 23, 2006, due to pain and complications from a broken back, depression, anxiety, and allergies. See Administrative Record ("AR") 12, 111, 118, 140. Both applications were denied upon initial administrative review and on reconsideration. See AR 12, 55, 61. A hearing was held before an administrative law judge ("ALJ") on May 3, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 28-50.

On May 18, 2010, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 12-21. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on April 15, 2011, making the ALJ's decision defendant's final decision. See AR 1; 20 C.F.R. § 404.981, § 416.1481. On June 7, 2011, plaintiff filed a complaint in this Court seeking judicial review of defendant's decision. See ECF #1-#3. The administrative record was filed with the Court on August 18, 2011. See ECF #12. The parties have completed their briefing, and thus this matter is now ripe for a decision by the Court.

Plaintiff argues defendant's decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred: (1) in failing to properly consider whether her post-trauma and migraine headaches were "severe" impairments; (2) in failing to properly determine whether she had a mental impairment that met or medically equaled the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05 ("Listing 12.05C"); (3) in failing to properly consider the medical evidence in the record; (4) in failing to properly discount her credibility; (5) in failing to properly assess her residual functional capacity; and (6) in finding her to be capable of performing other jobs existing in significant numbers in the national economy. The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while defendant's decision should

REPORT AND RECOMMENDATION - 2

be reversed, this matter should be remanded for further administrative proceedings.

DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.      The ALJ's Step Two Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. At step two of that process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

At step two in this case, the ALJ found plaintiff had severe impairments consisting of lumbar spine degenerative disc disease/residuals of a lumbar compression fracture, obesity, depression, anxiety/panic disorder, a learning disorder, a history of cannabis abuse, and possible alcohol abuse. See AR 14. Plaintiff argues the ALJ erred by not making any specific findings concerning the diagnoses of "[p]osttraumatic tension type headache" and "[m]igraine headache – menstrual migraine" Jon C. Kooiker, M.D., provided in early December 2006. AR 195. But any error the ALJ made in not mentioning these diagnoses was harmless. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).

This is because the physical examination performed by Dr. Kooiker at the time was fairly unremarkable, and his findings are devoid of any assessed work-related limitations. See AR 193-95. Indeed, plaintiff told Dr. Kooiker that she was "[c]urrently . . . managing her headaches with a Tylenol preparation as well as a medication for nausea." AR 193. Plaintiff notes she also told him that she was experiencing "daily" headaches (id.), and testified that she was getting migraine headaches a couple of times per month, which lasted "[u]sually about three days" (see AR 37).

REPORT AND RECOMMENDATION - 4

But at step two, although the ALJ must take into account a claimant's pain and other symptoms (see 20 C.F.R. § 404.1529, § 416.929), the severity determination is made solely on the basis of objective medical evidence:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. *At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.*

SSR 85-28, 1985 WL 56856 *4 (emphasis added). As such, the above testimony and self-reports are not a proper basis upon which to determine an impairment's severity. Accordingly, plaintiff has failed to meet her step two burden here or her burden of proving any error on the ALJ's part was harmful. Shinseki v. Sanders, 129 S.Ct. 1696, 1706 (2009) (burden of showing harmful error normally falls on party attacking agency determination).

II.     The ALJ's Step Three Determination

At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). See 20 C.F.R § 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. See id. The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings. See Tacket, 180 F.3d at 1098. "A generalized assertion of functional problems," however, "is not enough to establish disability at step three." Id. at 1100 (citing 20 C.F.R. § 404.1526).

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory

diagnostic techniques." 20 C.F.R. § 404.1508, § 416.908.  It must be established by medical

evidence "consisting of signs, symptoms, and laboratory findings." <u>Id.</u>; <u>see</u> <u>also</u> SSR 96-8p, 1996

WL 374184 *2 (determination that is conducted at step three must be made on basis of medical

factors alone).  An impairment meets a listed impairment "only when it manifests the specific

findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL

31248 *2.

An impairment, or combination of impairments, equals a listed impairment "only if the

medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least

equivalent in severity to the set of medical findings for the listed impairment." <u>Id.</u>; <u>see</u> <u>also</u>

<u>Sullivan v. Zebley</u>, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing

that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed

impairment, he must present medical findings equal in severity to *all* the criteria for the one most

similar listed impairment.") (emphasis in original).  However, "symptoms alone" will not justify

a finding of equivalence. <u>Id.</u>  The ALJ also "is not required to discuss the combined effects of a

claimant's impairments or compare them to any listing in an equivalency determination, unless

the claimant presents evidence in an effort to establish equivalence." <u>Burch v. Barnhart</u>, 400 F.3d

676 (9th Cir. 2005).

The ALJ need not "state why a claimant failed to satisfy every different section of the

listing of impairments." <u>Gonzalez v. Sullivan</u>, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ

did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's

impairments did not meet or exceed Listings).  This is particularly true where, as noted above,

the claimant has failed to set forth any reasons as to why the Listing criteria have been met or

equaled. <u>Lewis v. Apfel</u>, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss

combined effect of claimant's impairments was not error, noting claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal a listed impairment).

Plaintiff argues the medical evidence in the record shows the criteria of Listing 12.05C have been met.  Listing 12.05C provides in relevant part that "[t]he required level of severity" for "[m]ental retardation" is met when there is "[a] verbal, performance, or full scale IQ [score] of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt 404, Subpt. P, App. 1, § 12.05C.  At step three of the sequential disability evaluation process in this case, in regard to this Listing the ALJ found in relevant part as follows:

> . . . [T]he "paragraph C" criteria of [L]isting 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.  [Plaintiff] obtained a performance IQ of 68 in January 2008.  However, the examining psychologist noted that the score was not valid. (See Exhibit 5F).  The claimant was placed in special education classes while in school but he is clearly not mentally retarded.

AR 17.  Specifically, plaintiff argues the ALJ's observation that the performance IQ score lacked validity should have been merely the starting point of the inquiry at this step.

In other words, the ALJ, according to plaintiff, should have further developed the record by obtaining additional intelligence testing from "a more experienced psychologist or one with a better capacity for establishing rapport to obtain valid test results." ECF #14, pp. 10-11.  There is nothing in the record, however, to indicate the psychologist who conducted the above testing was not qualified or that she lacked the necessary rapport – to the extent this latter factor is important in conducting such testing – to do so.  See AR 250-59.  Rather, the lack of validity seems to have been due to plaintiff's "less than optimal . . . test taking efforts, interference from [her] pain, and possible rehearsal effects as she had already done this testing recently." AR 256, 258.

REPORT AND RECOMMENDATION - 7

Nor does the undersigned find the ALJ in this instance was required to obtain additional testing, as the evidence was neither ambiguous nor inadequate to allow for the ALJ to properly evaluate it. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (duty to further develop record triggered only if there is ambiguous evidence or when record is inadequate to allow for proper evaluation of evidence). The testing psychologist did not find plaintiff's IQ score to be ambiguous, but rather she concluded that its validity "could not be ascertained" due to the above three factors, all of which appear to have been caused by factors related to plaintiff's behaviors. AR 258. There is nothing to suggest, furthermore, that the same three factors would not result in similar invalidity on future testing.

Plaintiff goes on to argue further testing was required, because the record shows that she was in special education while in school and that she did not graduate from high school or obtain a GED, all of which is consistent with a low IQ. But although being placed in special education classes may be indicative of such difficulties, that fact alone is not sufficient to actually establish or even strongly suggest an IQ score of Listing-level severity. Indeed, plaintiff testified that she attended "regular classes" as well and that she only "had about six credits left to get" her high school diploma, once more indicating Listing 12.05C has not been met or medically equaled. AR 34. Her failure to graduate from high school, furthermore, appears to have been due at least in part to substance abuse problems she was having at the time, and she reported not pursuing her GED because she got a job. See AR 253.

III.    The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and

REPORT AND RECOMMENDATION - 8

resolution of conflicts" are solely the functions of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." <u>Morgan v. Commissioner of the Social Sec. Admin.</u>, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." <u>Id.</u> at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." <u>Reddick</u>, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Id.</u> The ALJ also may draw inferences "logically flowing from the evidence." <u>Sample</u>, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of

REPORT AND RECOMMENDATION - 9

those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

Plaintiff challenges the ALJ's following findings concerning the medical evidence in the record:

> . . . Brett Trowbridge, Ph.D. assessed on September 6, 2007, that the claimant had some mild to marked functional restrictions. However, it was also noted that the claimant was not taking any medications at the time. It was recommended to the claimant for her to obtain outpatient mental health treatment as well as medication treatment (Exhibit 15F). Dr. Terilee Wingate[, Ph.D.,] assessed on October 22, 2008, that the claimant had mild to marked limitations with her ability to perform basic work-related activities due to depression and anxiety. (Exhibit 20F). In November 2009, Dr. Trowbridge assessed that the claimant had marked limitations with social factors due to social isolation, withdrawal, low stress tolerance, socially inappropriate behavior due to depression and anxiety. However, he further noted that the claimant was not taking any psychotropic medications at the time. (Exhibit 23F). However, the assessments of Drs. Wingate and Trowbridge are not supported by objective findings. Both Drs. Wingate and Trowbridge appear to have based their assessments entirely upon an uncritical acceptance of the claimant's allegations concerning her depression and anxiety. While the claimant certainly has some level of depression and anxiety, the her [sic] demonstrated level of day to day psychopathology is more than adequately accommodated by the above restrictions for simple, repetitive tasks with minimal social interaction and no written instructions. Therefore, the assessments of Drs. Wingate and Trowbridge are not given significant weight in the determination of whether or not the claimant is disabled for Social Security purposes. . . .

REPORT AND RECOMMENDATION - 10

AR 19-20.  Plaintiff argues the ALJ erred in rejecting the findings of both psychologists on the basis that they uncritically accepted her self-reports.  A medical opinion that is premised on a claimant's subjective complaints may be discounted where the record supports the ALJ in discounting the claimant's credibility.  See Tonapetyan, 242 F.3d at 1149; see also Morgan, 169 F.3d 595, 601 (9th Cir. 1999).

Although Dr. Wingate and Dr. Trowbridge may have based their assessments to some extent on plaintiff's self-reports, they also appeared to rely on more objective clinical findings.  For example, in his initial, early September 2007 assessment, Dr. Trowbridge both conducted a mental status examination, which included his own observations of plaintiff's behavior, and he performed psychological testing.  See AR 297-300; Sanchez v. Apfel, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000) (clinical data may consist of observations of professionals trained in field of psychopathology); Clester v. Apfel, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) (results of mental status examination provide basis for diagnostic impression of psychiatric disorder, just as results of physical examination provide basis for diagnosis of physical illness or injury); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (opinion based on clinical observations supporting diagnosis of depression is competent psychiatric evidence).  Dr. Trowbridge's second, early November 2009 assessment referenced psychological testing as well (see AR 423), and a mental status examination was performed by Dr. Wingate (see AR 375-81).

Nor does the undersigned find the ALJ's "restrictions for simple, repetitive tasks with minimal social interaction and no written instructions,"[1] fully accommodate the limitations Drs. Wingate and Trowbridge assessed.  For example, they assessed plaintiff with a marked limitation

---

[1] As discussed in further detail below, the ALJ actually limited plaintiff to "**occasional contact with co-workers, supervisors, and the general public**" (AR 18 (emphasis in original), which on its face would seem to be much less restrictive than a limitation to only "minimal social interaction."

in her ability to respond appropriately to and tolerate the expectations of a normal work setting, and a moderate to marked limitation in her ability to maintain appropriate behavior. See AR 299, 377, 421. Accordingly, the ALJ erred here.

IV.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284. The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

In this case, the ALJ discounted plaintiff's credibility because her "reported activities" were "not shown to be consistent with her claim of total disability." AR 19. Specifically, the ALJ noted plaintiff reported taking care of personal needs, washing dishes periodically, doing laundry, walking her dog two to three times per week, reading, watching television, playing on the computer, shopping once or twice per week, going to the movies "at times," and visiting with family and friends. Id. The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).

First, activities of daily living can "meet the threshold for transferable work skills." Id. Under this ground, a claimant's testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Smolen, 80 F.3d at 1284 n.7. However, the claimant need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id. In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick , 157 F.3d at 722. Second, such activities can contradict a claimant's "other testimony." Id.

As pointed out by plaintiff, the record fails to show she spends a substantial part of her day performing the above daily activities or that those activities are necessarily transferable to a work setting. See AR 38-42, 148-52, 160, 162, 171. Nor do those activities as reported by her necessarily contradict her other testimony. Accordingly, the ALJ erred in relying on this reason for discounting her credibility. In addition, the ALJ did not provide any other specific reasons for finding plaintiff to be not fully credible.

REPORT AND RECOMMENDATION - 13

Defendant points to the ALJ's statement in his decision that "[f]or pain control," plaintiff took "prescription pain medication and over-the-counter medication," and that plaintiff indicated "she 'guesses' that pain medications work in controlling her pain." AR 19. It is true that an ALJ may discount a claimant's credibility on the basis that he or she has had conservative treatment. see Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure to request serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription of physician for conservative treatment only to be suggestive of lower level of pain and functional limitation).

The ALJ, though, did not actually state he was discounting plaintiff's credibility on this basis. Even if such a finding can be reasonably inferred on the ALJ's part, plaintiff's statement that she "guesses" the pain medication worked in controlling her pain is hardly indicative that it has actually done so, or done so to a degree inconsistent with her testimony. The undersigned thus finds this too was not a valid, stated basis for discounting plaintiff's credibility. The ALJ, therefore, failed to provide clear and convincing reasons for doing so, and as such his credibility determination cannot be supported.

V.    The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do

despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ assessed plaintiff with the residual functional capacity:

> **. . . to perform sedentary work . . . except that she requires a sit/stand option at will; is limited to only occasional crawling, crouching, kneeling, stooping, balancing, and climbing of ramps and stairs; no climbing of ladders, ropes and scaffolds; no work around hazards such as unprotected heights or dangerous machinery; limited to unskilled, simple, and repetitive tasks; occasional contact with co-workers, supervisors, and the general public; no occupational exposure to drugs or alcohol; and work that does not involve written instructions.**

AR 18 (emphasis in original). Plaintiff argues the ALJ erred here by failing to take into account the specific mental functional limitations assessed by Michael Regets, Ph.D., and Bruce Eather, Ph.D., two non-examining, consultative psychologists, including the moderate limitations in her ability to maintain attention and concentration, complete a normal workday and workweek and perform at a consistent pace they noted. See AR 262.

Those limitations are contained in Section I of the mental residual functional capacity assessment ("MRFCA") form Dr. Regets completed, the findings of which were confirmed by Dr. Eather. See AR 261-63, 296. But pursuant to the directive contained in defendant's Program Operations Manual System ("POMS"), **"[i]t is the narrative** written by the psychiatrist or psychologist **in [S]ection III [of the MRFCA form] that adjudicators are to use as the**

REPORT AND RECOMMENDATION - 15

**assessment of RFC**." POMS DI 25020.010(B)(1), https://secure.ssa.gov/apps10/poms.nsf/lnx/ 0425020010!open document (emphasis in original).[2]  In Section III, Drs. Regets and Eather set forth their narrative conclusions, which read in relevant part:

> . . . The claimant is capable of simple and some detailed tasks.  [The c]laimant would be able to persist . . .

> . . . The claimant has in the past been able to interact with a few coworkers and supervisors and has currently shown the ability to interact appropriately with doctors, their staff, and family members.  Deficits in social capability secondary to irritability and mood swings would preclude working with the general public in anything other than superficially social roles.

> . . . [The c]laimant continues to have the ability to adapt to the normal stresses encountered in daily life including avoiding normal hazards, the ability to travel using public or private transportation, and the ability to organize her day as evidence by the ability to plan and carry through with daily routines and attend appointments.  Adaptability for independent functioning is intact and augmented with medication and sobriety.

AR 263.  Given that the ALJ failed to even mention this significant probative evidence, he erred. On the other hand, the above narrative statement largely comports with the ALJ's mental RFC assessment, except with respect to plaintiff's ability to interact with the general public.  As such, other than in regard to the issue of public interaction, the ALJ's error here was harmless.  With respect to such interaction, the ALJ's limitation to occasional contact with the general public is not consistent with the restriction precluding plaintiff from "working with the general public in anything other than superficially social roles" assessed by Dr. Regets and Dr. Eather.  That error thus was harmful.  It also is not entirely clear the ALJ's mental RFC assessment is completely accurate, given that the ALJ failed to properly evaluate the initial assessment of Dr. Trowbridge and that of Dr. Wingate discussed above.

---

[2] It is true that the POMS "does not have the force of law." <u>Warre v. Commissioner of Social Sec. Admin.</u>, 439 F.3d 1001, 1005 (9th Cir. 2006).  Nevertheless, it has been recognized as "persuasive authority" in the Ninth Circuit. <u>Id.</u> Nor does the undersigned find or plaintiff provide any valid reasons for not following the POMS in this case.

VI.    The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e. The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 47. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. See AR 47-48. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 20-21.

Plaintiff argues the ALJ erred in relying on the vocational expert's testimony in this case, because it is inconsistent with the descriptions of the jobs the vocational expert identified that are contained in the Dictionary of Occupational Titles ("DOT"). Specifically, she argues that while the vocational expert testified that the hypothetical individual could perform those jobs, even with an at will sit/stand option, the descriptions thereof contained in the DOT do not allow for such an option. See AR 47-48; DOT 521.687-026[3], DOT 713.687-018, DOT 713.684-038. The undersigned agrees the ALJ erred here.

The ALJ may rely on vocational expert testimony that "contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). In addition, the ALJ has the affirmative responsibility to ask the vocational expert about any possible conflicts between his or her testimony and information contained in the DOT. See Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704. Thus, before relying on vocational expert evidence to support a finding of not disabled, the ALJ is required to "elicit a reasonable explanation for any discrepancy" with the DOT. Haddock, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704 *1. The ALJ also must explain how the discrepancy or conflict was resolved. See SSR 00-4p, 2000 WL 189704 *4.

In arguing that the vocational expert's testimony is consistent with the descriptions of the above jobs contained in the DOT, defendant states in relevant part:

> . . . SSR 83-12, *available at* 1983 WL 31253, clarifies that some jobs exist in which a person can sit or stand with a degree of choice, and that "[i]n cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base." A sit/stand limitation may allow for a finding of ability to adjust to other work existing in significant numbers in the national economy. As stated in SSR 96-9p,

---

[3] Plaintiff further notes that this DOT job number refers to a different job than that the vocational expert identified, and that in the DOT it is classified as light work, whereas the ALJ restricted her to sedentary work. See id.; see also AR 18, 47-48.

*available at* 1996 WL 374185, "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of 'disabled.'"  Rather, the determination depends on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. *Id.* at 6. . . .

ECF #15, p. 14.  But the fact that some jobs may exist that accommodate a sit/stand option does not mean that the ones identified by the vocational expert do, or that they do with respect to an "at will" sit/stand option.  Defendant also asserts the vocational expert's affirmative response to the ALJ's statement that he would assume the vocational expert's testimony is consistent with the information contained in the DOT unless otherwise advised (see AR 46), was sufficient to satisfy the Ninth Circuit's inquiry requirement.  But as noted above, a "reasonable explanation for any discrepancy" must be elicited from the vocational expert before the ALJ may rely on that expert's testimony.  The ALJ's failure to do so here, therefore, was error.  The ALJ's step five determination also cannot be upheld in light of his failure to provide proper reasons for rejecting the opinions of Drs. Wingate and Trowbridge, failure to properly discount plaintiff's credibility and failure to properly assess her residual functional capacity.

VII.    This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further

administrative proceedings would serve no useful purpose." <u>Smolen</u>, 80 F.3d at 1292; <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

<u>Smolen</u>, 80 F.3d 1273 at 1292; <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record concerning plaintiff's mental impairments and limitations, her residual functional capacity and her ability to perform other work existing in significant numbers in the national economy, it is appropriate to remand this matter for further administrative proceedings. Although plaintiff requests that on remand a different ALJ be assigned to hear this matter, she provides no explanation as to why she believes this is necessary, nor does the undersigned find any valid reasons for doing so.[4]

CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse defendant's decision and remand this matter for further administrative proceedings in accordance with the findings contained herein.

---

[4] Hearing officers who decide social security claims are presumed to be unbiased. <u>Schweiker v. McClure</u>, 456 U.S. 188, 195 (1982). This presumption "can be rebutted by a showing of conflict of interest or some other specific reason for disqualification." <u>Id.</u> The burden of establishing a disqualifying interest "rests on the party making the assertion." <u>Id.</u> at 196. That party must show "the ALJ's behavior, in the context of the whole case, was 'so extreme as to display clear inability to render fair judgment.'" <u>Rollins v. Massanari</u>, 246 F.3d 853, 858 (9th Cir. 2001) (citing <u>Liteky v. United States</u>, 510 U.S. 540, 555-56 (1994)). Further, "actual bias," rather than the "mere appearance of impropriety," must be shown in order to disqualify an ALJ. <u>Bunnell v. Barnhart</u>, 336 F.3d 1112, 1115 (9th Cir. 2003). Plaintiff has not met her burden of establishing such a disqualifying interest exists here. Indeed, she makes no showing in that regard. This does not mean defendant is prohibited from reassigning this matter to another ALJ on remand if deemed appropriate, just that there is no requirement in this case to do so.

REPORT AND RECOMMENDATION - 20

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. <u>See</u> <u>also</u> Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **February 10, 2012**, as noted in the caption.

DATED this 26th day of January, 2012.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 21